Daniel L. SANDERS, Petitioner—Appellant,

v.

Leslie RYDER, Respondent—Appellee.

No. 05–35344.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 1, 2006.

Decided June 7, 2006.

Michael C. Kahrs, Esq., Seattle, WA, for Petitioner–Appellant.

Alex A. Kostin, Esq., Gregory J. Rosen, Esq., Office of the Washington Attorney General, Olympia, WA, for Respondent–Appellee.

Before: REINHARDT, MCKEOWN, and CLIFTON, Circuit Judges.

### MEMORANDUM *

Daniel Sanders appeals the district court's denial of his habeas petition. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253 and reverse and remand for issuance of the writ.

Following a two-day jury trial in Washington state court, Sanders was convicted of child molestation. He appealed his conviction, alleging that he was coerced into waiving his right to appeal, that he received ineffective assistance of counsel, and that the prosecutor engaged in misconduct. The state appeals court denied his due process claim, finding that he had waived his right to appeal, and dismissed his other claims. The state supreme court denied his petition for review without comment. Sanders then filed a petition for federal habeas review, which included his ineffective assistance of counsel claim. That claim was ultimately found exhausted by this court, in *Sanders v. Ryder*, 342 F.3d 991 (9th Cir.2003), in which we remanded it to the district court for an evidentiary hearing on the merits. *Id.* at 1001. After conducting the hearing, the district court concluded that Sanders did not receive ineffective assistance of counsel, and he now appeals the district court's decision. At the time he filed this appeal, Sanders had served his sentence and had been released from prison.

The district court's denial of a habeas petition under 28 U.S.C. § 2254 is re-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

viewed *de novo*. *Beardslee v. Woodford*, 358 F.3d 560, 568 (9th Cir.2004). Factual findings made by the district court are reviewed for clear error. *Lambert v. Blodgett*, 393 F.3d 943, 964 (9th Cir.2004). Claims of ineffective assistance of counsel are mixed questions of law and fact, and are therefore reviewed *de novo*. *Beardslee*, 358 F.3d at 569.

■ As in *Pirtle v. Morgan*, 313 F.3d 1160 (9th Cir.2002), the state court in this case never reached the merits of the ineffective assistance of counsel claim. *See id.* at 1167. The Washington Court of Appeals dismissed Sanders's claim because it concluded that he had waived his right to appeal; therefore, it saw no reason to address the merits of his appeal. Because there is no state court decision on the merits, we review Sanders's ineffective assistance of counsel claim *de novo*.[1] *Id.*

The applicable federal law guiding this court's ineffective assistance of counsel inquiry is supplied by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on a claim of ineffective assistance of counsel under *Strickland*, Sanders must demonstrate both that his counsel's representation was deficient—in other words, that it "fell below an objective standard of reasonableness"—and that the deficiency was prejudicial. *Id.* at 688, 692, 104 S.Ct. 2052. To show prejudice, Sanders must demonstrate that, as a result of counsel's deficient representation, our confidence in the outcome

has been undermined. *Id.* at 694, 104 S.Ct. 2052.

Although the forensic evidence and the child's statements—made first to his mother and later to Dr. Stirling, the family doctor, and Detective Barry Folsom—constituted the only evidence against his client, Sanders's counsel failed to consult or hire a child abuse interview expert regarding proper interview techniques or a DNA expert, both of whom could have provided valuable testimony to rebut the state's evidence. Counsel also failed to interview the state's DNA forensic expert, who testified at trial that Sanders's DNA may not have been found on the washcloth or the child's clothes due to degradation. Trial counsel stated at the evidentiary hearing in federal court that he was "surprised" by such testimony at trial and the expert presented by petitioner at the evidentiary hearing testified that if there had been semen on the washcloth or towels, it would not have been completely undetectable, even after any possible degradation. The rebuttal testimony would have significantly undermined the only physical evidence directly supporting the criminal charge.

As the district court later acknowledged, had the child's statements "not come into evidence, the state's only evidence against Sanders at trial would have been semen stains in the bedroom and bathroom—insufficient evidence to justify a conviction."[2] Nevertheless, at the pre-trial

---

1. Even if we were to hold that Sanders's federal habeas petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, we would "perform an 'independent review of the record' to ascertain whether the state court decision was objectively unreasonable," as there is "no reasoned state court decision" as to his ineffectiveness claim. *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir.2005) (per curiam) (quoting *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir.2003) (quoting *Delgado v. Lewis*, 223 F.3d

976, 982 (9th Cir.2000))) (internal quotation marks omitted). Under AEDPA's standard of review, we would conclude that the state court's decision in this case was "objectively unreasonable," and on that basis would grant Sanders habeas relief. 28 U.S.C. § 2254(d); *Wiggins v. Smith*, 539 U.S. 510, 520–21, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

2. Sanders offered a satisfactory explanation for the semen stains, at least from a legal standpoint. *See infra* page 7.

hearing, the purpose of which was to determine the issue of the child's competency to testify at trial and the admissibility of the statements he made to his mother, Dr. Stirling and Det. Folsom, defense counsel did not call any witnesses, did not file any briefs, and made no argument whatsoever as to why the statements should not be admissible.[3] In contrast, the prosecution called six witnesses to testify on behalf of the state, filed a 15–page brief with the court, and made an extensive closing argument, specifically analyzing the legal factors tending toward admissibility[4] and the relevance to those factors of the evidence adduced at the pre-trial hearing.

Although expert witnesses who testified at the federal evidentiary hearing described the interview techniques used by Dr. Stirling and Det. Folsom as leading and inappropriate, trial counsel failed to call any witnesses at the pre-trial hearing to question the prosecution witnesses' techniques and thereby to undermine the reliability of the child's statements made to them, for purposes of the *Ryan* test.[5] Defense counsel also failed to call witnesses such as Patrick Dixson of the Department of Social and Health Services or Deputy Gary Denham, who could have testified to inconsistencies in the mother's various accounts of what the child had told her regarding the alleged incident. Equally important, defense counsel failed to offer evidence of the strong likelihood that the three-year-old child had been influenced by his mother, who maintained an antagonistic relationship with petitioner and who had been alone with the child for a full day before he made statements to any other witness, even though the child stated that his mother had told him "to say these things about [Sanders]." *See In re Dep. of A.E.P.,* 135 Wash.2d 208, 956 P.2d 297, 303 (1998) (en banc) (reviewing expert testimony that "the first interview of a child concerning sexual abuse is the most important, because '[i]t's at that point the child's memory is most susceptible to influence.... [T]hat first interview is the opportunity to either cement that child's memory and fix it at what really happened or to influence it or alter it."). After considering the arguments presented and reviewing the *Ryan* factors, the court ruled that while the child was incompetent to testify at trial, his hearsay statements would be admissible under *Ryan.*

The only incriminating evidence presented by the state at trial was the hearsay statements of the child, relayed through several witnesses, and Sanders's DNA in semen samples found on the bathroom and bedroom floors. Sanders ultimately admitted to masturbating in both the bathroom and bedroom, during the culmination of sex acts in which he claimed to have engaged with the child's mother. No semen was found on the washcloth allegedly used to wipe off the child or on the child's clothes. Defense counsel did not call any expert witnesses to testify at trial and Sanders was the only witness to testify on behalf of the defense. Defense counsel failed to effectively impeach the child's mother through cross-examination or to call witnesses who could have testified to

---

**3.** Defense counsel limited his closing argument to five innocuous sentences regarding the first issue—competency to testify—and even there said only that the judge was familiar with the law and that he was noting his objection to the anticipated ruling for the record.

**4.** In *State v. Ryan,* 103 Wash.2d 165, 691 P.2d 197 (1984) (en banc), the Washington Supreme Court set forth nine non-exclusive factors to determine whether there are sufficient indicia of reliability to justify the admission of child hearsay statements at trial. *Id.* at 205.

**5.** *See supra* note 4.

the inconsistency of her statements regarding the alleged incident. In closing, the state relied primarily on the child hearsay statements, pointed out the lack of evidence presented by the defense to impeach the mother or to undermine her credibility, and noted that there were no defense witnesses to corroborate Sanders's version of events.

Counsel's failure to interview critical witnesses or experts prior to the pre-trial hearing or the trial, to offer any evidence, witnesses or arguments regarding the admissibility of the child's hearsay statements at the pre-trial hearing, and to call witnesses at trial who could have impeached the mother, amounted to a failure to present any real defense on Sanders's behalf. There was no rational reason presented for such failures, particularly when counsel's purported reason for many of his failures was to avoid the admission of evidence that was ultimately presented to the jury regardless. Counsel's conduct thus "fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052.

██ The next question, then, is whether Sanders was prejudiced by such deficient conduct. *Id.* at 692, 104 S.Ct. 2052. According to *Strickland,* a defendant must show only a "reasonable probability" that the result would have been different, such that our confidence in the outcome is undermined, and not "that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693–94, 104 S.Ct. 2052. "We must analyze each of [Sanders's] claims separately to determine whether his counsel was deficient, but 'prejudice may result from the cumulative impact of multiple deficiencies.'" *Boyde v. Brown,* 404 F.3d 1159, 1176 (9th Cir.2005) (quoting *Cooper v. Fitzharris,* 586 F.2d 1325, 1333 (9th Cir.1978) (en banc), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59

L.Ed.2d 793 (1979)), *amended by,* 421 F.3d 1154 (9th Cir.2005).

As noted earlier, without the child's hearsay statements, there would have been insufficient evidence to support a conviction at trial. Yet defense counsel failed to offer any evidence or make any argument whatsoever at the pre-trial hearing—the critical moment at which such admissibility was to be decided—regarding *Ryan* or the entire issue of admissibility. Had the state court been provided with appropriate expert testimony as to the unreliability of the child's statements and appropriate evidence as to the mother's bias and propensity to coach her children in order to obtain her desired results, and had counsel offered even the most obvious legal arguments supporting exclusion of the child's testimony at trial, there is a reasonable probability that the statements would have been found inadmissible. At the least, we cannot be confident that the result of the pre-trial hearing would have been unaffected. It follows that there is a reasonable probability that the outcome of the trial itself would have been different. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

Moreover, even if the child's statements were found admissible, had counsel presented expert testimony at trial to rebut the state's forensic and child interview witnesses and called other witnesses to effectively impeach the mother's credibility, there is a reasonable probability that the jury would not have returned a unanimous verdict finding Sanders guilty beyond a reasonable doubt. Again, however, counsel failed to call any witnesses to rebut the state's case, other than his client, or to undermine the credibility of the child's mother, the state's key witness, or of its forensic expert. Without any such defense witnesses, the defense's case was left to stand solely on defense counsel's minimal cross-examination and the testimony of the

defendant. We conclude that counsel's deficient conduct, particularly when considered cumulatively throughout the various stages of pre-trial and trial, undermines our confidence in the outcome; therefore, Sanders has demonstrated prejudice under *Strickland.*

There was no rational reason for defense counsel's failure to challenge the only pieces of evidence offered by the state—the child hearsay statements and the limited forensic evidence—both of which could have been severely undermined by the presentation of expert testimony. Counsel not only failed to present such experts at trial, but also failed to consult them pre-trial, thereby depriving himself of critical knowledge necessary to the formulation of a defense. As noted, without the child's hearsay statements, there would have been insufficient evidence to support a conviction, and yet counsel made no argument against admissibility at the pre-trial hearing. Further, as emphasized by the prosecution's closing argument at trial, counsel failed to offer witnesses to impeach the credibility of the state's key witness—the child's mother—or to corroborate Sanders's version of events. Given such deficiencies, no reasonable court could maintain confidence in the jury's verdict. Accordingly, we reverse the district court's denial of Sanders's habeas petition and remand for issuance of the writ.

REVERSED AND REMANDED.

CLIFTON, Circuit Judge, dissenting.

The district court conducted a 6–day evidentiary hearing in this case, after which the magistrate judge issued a detailed 27–page report and recommendation, which concluded that the Sanders' petition should be denied. The district judge made an independent examination and issued his own 19–page order denying the petition. That order did not adopt all of the recommendations of the magistrate judge, but it did agree with and adopt the recommendation relevant to this appeal, rejecting petitioner's claim based on alleged ineffective assistance of counsel. In particular, the district court concluded that Sanders had failed to establish either of the two prongs required under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). I agree with that assessment.

I respectfully dissent.